IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARY HAUGEN, )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>**Acting Commissioner of Social Security,** )<br>)<br>**Defendant.** )<br>_____ ) | **CIVIL ACTION**<br><br>No. 17-1160-JWL |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Commissioner's final decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

**I.    Background**

Plaintiff argues that the Administrative Law Judge (ALJ) erred when he accorded "the treating source opinion substantial weight, but then failed to include the limitations that opinion suggested." (Pl. Br. 1) (issue 1). The court does not agree.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the ALJ's decision.

## II.    Discussion

Plaintiff argues that:

> the ALJ gave "significant weight" to opinions from Dr. Shah, [Ms.] Haugen's treating psychiatrist, Dr. Berg, an examining source, and Dr. R. E. Schulman, a non-examining source. (Tr. at 20). However, the ALJ failed to include many of the limitations within Dr. Shah's opinion. This omission demands a remand because the ALJ is responsible for formulating an RFC that include[s] all of Haugen's credible limitations, especially those more restrictive than what he assessed.

(Pl. Br. 8). She points to two limitations allegedly opined by Dr. Shah (that Plaintiff would be off task 10 percent of a workday and that she "would be unable to perform activities within a schedule, maintain regular attendance, and be punctual up to thirty percent of the time") and argues that despite according significant weight to Dr. Shah's opinion and finding the opinion well supported and consistent with the evidence, he erred in failing to include these limitations in the RFC assessed. Id. at 8-9 (citing R. 579, 580). She argues that the ALJ explicitly found the opinion "well-supported" and "implicitly found the opinion consistent with other substantial evidence when he found it consistent with Dr. Berg's findings and other treatment notes." Id. at 9. Consequently, she concludes that "the ALJ had no choice but to give controlling weight to Dr. Shah's opinion," and Dr. Shah's opinion "trumps" any differing opinion. Id. at 9-10. Plaintiff cites opinions from several courts of this District for the proposition that when an ALJ accords weight to a medical source opinion, does not accept the entire opinion, and fails to

4

explain why he did not accept portions of the opinion, he has erred.  (Pl. Br. 10-11) (citing Frakes v. Berryhill, CV 16-1066-JWL, 2017 WL 1354863, at *4 (D. Kan. Apr. 13, 2017); James v. Colvin, No. 13-1387-JWL, 2014 WL 6610308 (D. Kan. Nov. 20, 2014); Schmitt v. Colvin, No. 13-1129-SAC, 2014 WL 3519091, at *6-7 (D. Kan. July 16, 2014); Henderson v. Astrue, No. 11-2645-JWL, 2013 WL 141610, at *4 (D. Kan. Jan. 11, 2013); and Lodwick v. Astrue, No. 10-1394-SAC, 2011 WL 6253799, at *4 (D. Kan. Dec. 13, 2011)).

In her brief, the Commissioner cites considerable record evidence which supports the decision of the ALJ, including the medical opinions of Dr. Shah, Dr. Berg, Dr. Locke, and Dr. Schulman.  (Comm'r Br. 9-13).  She then argues that "[t]o the extent Dr. Shah's opinion connotes further restrictions, the ALJ did not adopt such."  Id. a 13.  She argues that the ALJ properly declined to afford controlling weight to Dr. Shah's opinion, and that the two limited abilities relied on by Plaintiff do not require greater limitations than those assessed by the ALJ.  Id. at 14-16.

In her Reply Brief, Plaintiff argues that despite the Commissioner's argument that the ALJ provided good reasons not to adopt the connotations of Dr. Shah's opinion, the ALJ provided no reasons to discount Dr. Shah's opinion. (Reply 1).  She notes that the ALJ did not assess a limitation of being off task ten percent of the workday.  Id.  Finally she argues that Dr. Shah's opinion is clearly a medical opinion.

### A.   **Controlling Weight**

The ALJ did not err in failing to accord controlling weight to Dr. Shah's treating source opinion.  As Plaintiff argues, the ALJ accorded significant weight to the medical opinions of Dr. Shah, Dr. Schulman, and Dr. Berg.  (R. 20).  He found that each of the

5

doctors "indicated that the claimant is capable of performing simple work that involves limited social interaction," and that their "opinions are well-supported by the evidence, including the claimant's treatment records and the examination findings of Dr. Berg." Id.

A treating source medical opinion must be accorded controlling weight under two strict conditions. "If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); see also, Soc. Sec. Ruling (SSR) 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2017) ("Giving Controlling Weight to Treating Source Medical Opinions"). Regarding the first criterion, while the ALJ found that all three opinions are "well-supported by the evidence," he did not find Dr. Shah's opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and Plaintiff does not point to evidence demonstrating that it is. Plaintiff's argument that a finding of "well-supported by the evidence" is equivalent to a finding of "well-supported by medically acceptable clinical and laboratory diagnostic techniques," assumes that the ALJ's finding of support was based only on medical evidence, and forgets that an ALJ is required to weigh medical opinions by regulatory factors far beyond the limited scope of medically acceptable clinical and laboratory diagnostic techniques. See, i.e., 20 C.F.R. § 404.1527(c).

6

Plaintiff's argument that Dr. Shah's opinion meets the second criterion because the ALJ impliedly found the opinion consistent with other substantial evidence consisting of Dr. Berg's findings and other treatment notes, also misunderstands the test for controlling weight. In the regulations, the test for consistency is phrased in the negative--controlling weight must be accorded if the treating source opinion is "not inconsistent" with the other substantial evidence in the case record. SSR 96-2p, explains that the term "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in Richardson v. Perales, 402 U.S. 389 (1971). SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2017). As the Ruling explains, evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." Id. The Ruling goes on to explain that the threshold for denying controlling weight is low. The ALJ need only find evidence which is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the [treating source's] medical opinion." Id. Thus, the Ruling requires that even if the first criterion for controlling weight is met, the second inquiry is not whether there is any other substantial evidence consistent with the treating source opinion. Rather, the inquiry requires that if there is other substantial evidence in the record inconsistent with the treating source opinion (in this case, Dr. Shah's opinion), controlling weight may not be accorded.

### B.      Failure to Assess Dr. Shah's Limitations

Even though Plaintiff has not demonstrated that Dr. Shah's opinion must be accorded controlling weight, the court must address her argument that the ALJ failed to explain why he did not assess limitations consistent with Dr. Shah's opinion that Plaintiff will be off task ten percent of the workday, or his opinion that Plaintiff is unable to perform activities within a schedule, maintain regular attendance, and be punctual--up to thirty percent of the time.  The problem here is that Plaintiff has not shown that the ALJ rejected any portion of Dr. Shah's opinion (phrased differently, that his assessment cannot accommodate the limitations Dr. Shah opined).

For mental limitations, the ALJ found that Plaintiff "can understand, remember, and execute simple instructions, and can maintain concentration, persistence, and pace in so doing.  She may frequently interact with colleagues, supervisors, and the public.  The claimant can tolerate low-stress work, defined as only occasional changes in a work setting, requiring only occasional decisionmaking, and involving no fast-paced production rates or strict time limits." (R. 17).  This mental RFC is a reasonable understanding of the limitations opined in the opinions of Dr. Shah, Dr. Schulman, and Dr. Berg when considered in the circumstances of this case, and Plaintiff has not shown that Dr. Shah's opinion <u>compels</u> finding greater limitations.

Plaintiff has the burden of proof of RFC in a Social Security disability case, and she has not shown that being off task ten percent of a workday is not accommodated by limitations to simple instructions, frequent interactions, only occasional changes in the work setting, occasional decisionmaking, and no fast production rates or strict time

8

limits. In fact, she has not shown that Dr. Shah's mental medical source statement provides an opinion that Plaintiff will be off task ten percent of the workday. The form Dr. Shah used asks whether Plaintiff would likely be off task from her symptoms, and Dr. Shah replied, "yes." (R. 579). It then asks, "what percentage," and Dr. Shah responded, "10%." It is clear Dr. Shah believes Plaintiff will be off task 10%, but it is not clear he means she will be off task ten percent of a workday. He may mean that Plaintiff can only bring ninety percent of her attention to any given task. More importantly, Plaintiff has not shown that being off task ten percent of a workday would preclude work. To be sure, as Plaintiff points out the ALJ asked the vocational expert (VE) if an individual who was off task <u>twenty percent</u> of the time could maintain competitive employment, and the expert responded that she could not. (R. 60). If Plaintiff's counsel believed being off task ten percent of the time would preclude competitive employment, she could have asked the VE that particular question, knowing that Dr. Shah had opined that Plaintiff would be off task ten percent. She did not. This court has reviewed many hearing transcripts in Social Security disability cases, and many of them have shown that being off task ten percent of the time does not preclude competitive employment, being off task twenty percent of the time precludes competitive employment, and being off task fifteen percent of the time is near the turning point between competitive employment and no competitive employment. No doubt the ALJ and Plaintiff's counsel in this case have participated in many more disability hearings than those of which this court has reviewed the transcript.

Similarly, Plaintiff has not shown that a <u>moderate</u> limitation in the ability "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" (R. 94, 580),[1] is not accommodated by the ALJ's assessment of limitations to "understand, remember, and execute simple instructions" while maintaining concentration, persistence, and pace; to only frequently interact; and with only occasional changes in the work setting, occasional decisionmaking, and no fast production rates or strict time limits.

Plaintiff apparently relies upon the definition of "Moderately Limited" in Dr. Shah's medical source statement and argues, based upon a moderate limitation in the ability at issue, that Plaintiff "would be <u>unable</u> to perform activities within a schedule, maintain regular attendance, and be punctual <u>up to thirty percent of the time</u>" (Pl. Br. 8) (emphasis added), and that she would be <u>unable</u> to maintain attendance thirty (30) percent of the workweek." <u>Id.</u> at 12 (emphasis added). Dr. Shah's statement defines "Moderately Limited" as "Impairment levels are compatible with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance." (R. 579).

In making her argument, Plaintiff does not cite to this definition, but she appears to rely upon it. And, she takes an expansive view of the definition's explanation of 1

---

[1] The court notes that the ability opined in Dr. Shah's medical source statement and relied upon by Plaintiff in her arguments in this regard (ability no. 7 in Dr. Shah's statement) (R. 580), is worded identically to the fourth ability under the heading "Sustained Concentration and Persistence" in Section I of the Social Security Administration's "Mental Residual Functional Capacity Assessment" form completed by Dr. Schulman. (R. 93-95).

standard deviation below the norm as a 30% absolute reduction in performance.  She interprets a <u>thirty percent reduction from the norm in production</u> to equate to <u>thirty percent of the time</u> when she argues that the abilities at issue cannot be performed up to 30% of the time and that she would be unable to maintain attendance 30% of the workweek.  That understanding is in conflict even with the remainder of the definition's (rather generous) explanation that a moderately limited ability is "compatible with some, but not all, useful functioning."  (R. 579).

Most importantly, the definitions of the limitations in Dr. Shah's mental medical source statement are irreconcilable with the Social Security regulations' definition of the terms mild, moderate, marked, and extreme when evaluating mental impairments.  The Commissioner has promulgated a regulation controlling the evaluation of mental impairments.  20 C.F.R. § 404.1520a.  In that regulation, she explains how she rates the degree of mental functional limitation and she explains that rating "will be based on the extent to which [a claimant's] impairment(s) interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis."  <u>Id.</u> at § 404.1520a(c).  She explains that she will use a five-point scale in rating limitations-- none, mild, moderate, marked, and extreme.  <u>Id.</u>  The Commissioner further explains her evaluation of mental disorders in the Listing of Impairments.  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00.  There she explains that

> RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments.  An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of <u>an expanded list of work-related capacities</u> that may be affected by mental disorders when your

11

>     impairment(s) is severe but neither meets nor is equivalent in severity to a
>     listed mental disorder.

Id. § 12.00A (emphasis added); see also SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2017) ("The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in" the four functional areas.). She explains:

>     Where we use "marked" as a standard for measuring the degree of
>     limitation, it means more than moderate but less than extreme. A marked
>     limitation may arise when several activities or functions are impaired, or
>     even when only one is impaired, as long as the degree of limitation is such
>     as to interfere seriously with your ability to function independently,
>     appropriately, effectively, and on a sustained basis.

Id. § 12.00C.

Thus, "moderate," "marked," and "extreme" are terms of art used by the Social Security Administration in evaluating the severity of functional limitations caused by mental impairments, and denoting increasing degrees of limitation based on increasingly serious interference with a claimant's ability to function independently, appropriately, and effectively on a sustained basis. Although Plaintiff agrees that "Dr. Shah's opinion tracks with the Section I [(Mental RFC] worksheet the State agency uses to evaluate psychiatric limitations," and although the terms used in Dr. Shah's medical source statement are the same as the agency's terms of art, the definitions of those terms in Dr. Shah's medical source statement do not track the agency's definitions of the terms of art. Moreover, as the Commissioner points out, the mental RFC form used by the Commissioner includes a level of limitation entitled "not significantly limited" whereas

the lowest level of limitation in the form used by Dr. Shah is "Mildly Limited," thereby suggesting that every claimant who has any mental impairment will be at least mildly limited in every mental ability.  This suggests that the relative ratings will be inflated by the practitioner to whom the form is given for completion.  This conclusion is supported by the fact that Dr. Shah provided a response for every ability presented, thereby finding implicitly that Plaintiff was at least mildly limited in every mental ability.  (R. 579-80).

Plaintiff's argument of error appears to rely on the definitions in Dr. Shah's statement and relies without citation to authority on the presumption that Dr. Shah may use terms of art in a Social Security case while at the same time using different definitions than the terms of art.  However, Plaintiff does not even rely on the definitions in the form completed by Dr. Shah.  Rather, she relies on a 30% reduction in ability <u>in absolute terms</u> rather than a 30% deviation <u>from the norm</u>.  Plaintiff simply has not demonstrated that the ALJ erred in evaluating Dr. Shah's opinion.  The ALJ's evaluation of Dr. Shah's opinion is reasonable considering the evidence in the record, especially considering the terms of art used.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated April 25, 2018, at Kansas City, Kansas.

       s:/ John W. Lungstrum
       **John W. Lungstrum**
       **United States District Judge**